IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.:      3:11cr13/MCR/EMT
                                                           3:12cv254/MCR/EMT

JAMES N. BROWN

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Second Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (docs. 366, 367), as well as the Government's response in opposition to the motion (doc. 371). This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant was charged in one count of a two-count indictment with conspiracy to possess and distribute pseudoephedrine with knowledge that it would be used to manufacture methamphetamine (doc. 3). He entered a guilty plea pursuant to a written plea agreement and statement of facts on March 11, 2011 (docs. 138, 139). The factual summary, which was signed by Defendant and his attorney

---

[1] Detailed statements of facts describing the offense conduct are set forth in the Presentence Investigation Report, the transcripts of the guilty plea and sentencing hearings, and other documents (*see* docs. 139, 249, 333, 369, 370), and will not be set forth herein unless necessary to the resolution of Defendant's claims.

Spyro Kypreos, stated in relevant part that during the time frame charged in the indictment, Defendant worked alongside several co-defendants to purchase pseudoephedrine from area pharmacies in order to manufacture the pseudoephedrine into methamphetamine (doc. 139).  Defendant and others traveled to pharmacies to purchase the pseudoephedrine so it could be "pooled" for the manufacturing process (*id.*).   Defendant was aware that the pseudoephedrine would be and was used to manufacture methamphetamine, as that was the purpose of the ongoing conspiracy, and he personally purchased in excess of forty (40) boxes of pseudoephedrine in order to further the criminal venture (*id.*).

The Presentence Investigation Report ("PSR") was disclosed to the defense on April 22, 2011 (doc. 186 ).  Defendant was held accountable for at least 100 grams but less than 300 grams of pseudoephedrine (doc. 186, Draft PSR, ¶ 121).  He was assessed a two-level upward adjustment because the offense involved a hazardous or toxic substance and another two-level upward adjustment for obstruction of justice (Draft PSR, ¶¶ 122, 125).  After a three-level downward adjustment for acceptance of responsibility due to his timely guilty plea, Defendant's total offense level was 33 (Draft PSR, ¶¶ 127, 130).  Defendant's criminal history category was V, and the applicable advisory guidelines range was 210 to 240 months in light of the application of a statutory maximum term of imprisonment (Draft PSR, ¶¶ 146, 196).

Defendant filed a response to the PSR in which he did not contest the total amount of drugs attributable to him (although he did object to the use of certain statements against him) (doc. 215).  Defendant objected to the obstruction adjustment and the omission from the PSR of the fact that his mental and emotional condition, as set forth in both the PSR and the response thereto, could warrant a downward departure (*id.*).  The Government filed a response in which it opined that the sentencing guidelines range was properly calculated (doc. 216).  A final PSR made editorial corrections that did not affect the applicable guidelines range (doc. 227).

Defendant was sentenced on June 9, 2011 to a term of 210-months imprisonment (*see* doc. 239).  Less than one week later, the court entered an order indicating that it would resentence Defendant due to errors in his criminal history (doc. 246).  The Second Revised Final PSR reflected that Defendant's criminal history category was IV and that the applicable guidelines range was 188 to 235 months (doc. 249, Second Final PSR ¶¶ 146, 196).  On June 21, 2011, the court sentenced Defendant at the low end of this range to a term of 188-months imprisonment (*see* docs. 254, 262).

Defendant did not appeal.  In the present motion, Defendant raises ineffective assistance of counsel claims, which he has separated into three grounds for relief.  The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  See 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States,

523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

*Strickland*, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, ___, 131 S.Ct. 770, 792 (2011) (citing *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States,

456 F. App'x 804, 807 (11th Cir. 2012) (citing <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* <u>Chandler v. McDonough</u>, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing <u>Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); <u>Hill v. Moore,</u> 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); <u>Ferguson v. United States</u>, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004); <u>Tejada</u>, 941 F.2d at 1559; <u>Holmes v. United States</u>, 876 F.2d 1545, 1553

(11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  <u>Lynn</u>, 365 F.3d at 1239.

Ground One

Defendant first contends he was denied effective assistance of counsel when counsel failed to object to the Government's "breach" of the plea agreement.  Defendant asserts that both counsel and the Government promised him that his base offense level would be no more than Level 26 (*see* doc. 367 at 6–7), yet he was sentenced at Level 32.

During the plea colloquy, the court explained to Defendant that he faced a term of up to 20 years in custody, and he indicated that he understood (doc. 333 at 45).[2]  The court explained generally about how the sentencing guidelines worked, and that "no one here in the courtroom today is going to be able to tell you what your guideline range is before you enter your guilty plea" (*id*. at 48).  It went on to state more than once that no one could tell any defendant what his or her sentence would be because the sentence did not have to be within the applicable guideline range (*id*. at 48–50).  After explaining that a substantial assistance motion was not guaranteed, the court noted that the plea agreement specifically stated that what was contained in the document was the only agreement that Defendant had with the Government (*id*. at 52).  It then advised that anyone for whom that was not the case, or who believed that they had an agreement with the Government that was not reflected in the document, needed to speak up and let the court know at that time (*id*. at 52–53).  The record indicates silence from the Defendant.  After the Government explained the facts it was prepared to prove at trial, the court explained to Defendant that the Government was not tied to the minimum amount of drug weight reflected in the statement of facts (*id*. at 55–56).   The Government noted that most of the answers to the court's questions were silence, understood as consent, and requested that the court inquire if any defendant had any further questions or objections (*id*. at 58).  The court again addressed the defendants as a group and asked whether anyone had any questions or objections, or needed clarification or more time to confer with counsel (*id*.).  Defendant's counsel clarified on the record that he had advised Defendant that the factual statement contained an admission that "pooling" of the pseudoephedrine occurred and that they would not know the weights of the drugs attributed to

_____

[2] The court simultaneously conducted a plea colloquy for seven defendants in this case.  Hence, Defendant's affirmative response is reflected in the response of "all Defendants."

Defendant until he received the PSR (*id*. at 62–63).   The court stated that if a particular individual's plea agreement contained a reference to traveling to pharmacies and pooling the chemicals that was not factually accurate, the individual should not have signed the plea agreement (*id*. at 63).   After a brief recess, the court inquired specifically of each defendant, including Defendant James N. Brown, whether he or she was satisfied with the factual summary and wished to proceed with the plea (*id*. at 64).   Defendant indicated that he was satisfied, and Defendant then entered a plea of guilty (*id*. at 64, 67–68).

A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); Winthrop-Redin v. United States, 767 F.3d 1210 (11th Cir. 2014) (citing Blackledge).   Solemn declarations made under oath in open court carry a strong presumption of verity.  Blackledge, 431 U.S. at 73–74; Connolly v. United States, 568 F. App'x 770, 771 (11th Cir. 2014) (citing Blackledge); Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1349 (11th Cir. 2010) (citing Blackledge).  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice.  Blackledge, 431 U.S. at 73–74; Winthrop-Redin, 767 F.3d at 1216.  In fact, such allegations are subject to summary dismissal.  Winthrop-Redin, 767 F.3d at 1216 (citing Blackledge, 431 U.S. at 74).  A defendant "bears a heavy burden to show his statements [under oath] were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); United States v. Green, 275 F. App'x 941 (11th Cir. 2008); United States v. Cardenas, 230 F. App'x 933 (11th Cir. 2007).  "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."  United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975)).

In this case, Defendant's representation that he had a private or secret "agreement" with the Government regarding the quantity of drugs for which he would be held accountable is squarely refuted by the record.  Defendant has presented nothing to suggest that his assertions are anything but a "newly-minted story" aimed at reducing his lawful sentence.  *See* Winthrop-Redin, 767 F.3d at 1217.  Thus, there was no breach of the plea agreement.  Correspondingly, counsel had no basis to object to a breach of the plea agreement, and it is well-established that counsel is not ineffective for

failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); *see also, e.g.*, Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit). Therefore, counsel did not perform deficiently for failing to object to an alleged breach of the plea agreement, and Defendant is not entitled to relief on this claim.

Ground Two

In his second ground for relief, Defendant contends that counsel was constitutionally ineffective because counsel did not object to the quantity of drugs attributed to him. Specifically, Defendant maintains that he was held accountable for 100 to 300 grams of pseudoephedrine, despite the fact that the Factual Summary stated that Defendant personally had only purchased in excess of forty (40) boxes of pseudoephedrine (doc. 139).

As noted above, during the plea colloquy the district court carefully ensured that Defendant understood the full ramifications of entering a guilty plea. The court explained to Defendant that the Government was not tied to the minimum amount of drug weight reflected in the statement of facts (doc. 333 at 55–56). Defense counsel clarified on the record that he had advised Defendant that the factual statement contained an admission that "pooling" of the pseudoephedrine occurred and the ramifications of this admission (*id*. at 62–63). Counsel also noted that he had advised his client that that they would not know the quantity of the drugs that would be attributed to Defendant until he received the PSR (*id*. at 63). Thus, to the extent Defendant's asserts he did not know that he could be held accountable for more than the forty boxes of pseudoephedrine, his claim is refuted by the record.

Additionally, Defendant has offered no meaningful argument in support of a claim that the district court's factual determination as to the amount of drugs attributable to him was incorrect, and none is apparent from the record.  Despite Defendant's admission that he was involved in pooling pseudoephedrine with multiple other conspirators, the PSR only attributed enough "conspiratorial pseudoephedrine" to him that his offense level increased by two levels.  Because Defendant personally procured 89 grams, the increase in the offense level required a finding that there were only eleven additional grams of pseudoephedrine reasonably foreseeable to Defendant from other conspirators (doc. 249, Second Final PSR at ¶¶ 59, 103).  As noted by the Government in its response, in light of the total amount of pseudoephedrine involved in the conspiracy, Defendant conceivably could have had far greater quantities of pseudoephedrine attributed to him under the sentencing guidelines and binding circuit law.  *See* U.S.S.G. § 1B1.3, cmt. n. 2; United States v. Vestry, 524 F.3d 1198, 1219 (11th Cir. 2008) (quoting United States v. Matthews, 168 F.3d 1234, 1247 (11th Cir. 1999)).  Therefore, a decision not to make an unfounded objection to the quantity assessment in this case, and thereby potentially risk greater exposure, was not constitutionally ineffective, and Defendant is not entitled to relief on this ground.

Ground Three

In Defendant's third ground for relief, he asserts that counsel was constitutionally ineffective by failing to object to the application of the obstruction of justice enhancement.  First, the court notes that counsel did object to this enhancement (*see* doc. 215 at 4).  However, counsel strategically chose not to pursue the objection after becoming aware that pursuit of same could result in Defendant losing both the three-point acceptance of responsibility adjustment and his opportunity to cooperate with the Government (*see* doc. 216 at 2, doc. 371, exh. A).

Additionally, the court notes that Defendant does not suggest why the application of this enhancement was inappropriate in his case.  The PSR reflects that Defendant and co-defendant Ramsey attempted to intimidate a cooperating co-conspirator from providing further information to law enforcement by physically assaulting him (Second Final PSR ¶¶ 97, 98, 117, 118).  In order to establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance, Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987), but he failed to do so.  And, as noted *supra*, conclusory allegations of ineffective assistance such as those raised in this

claim are insufficient to satisfy the Strickland test.  *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Defendant has not shown that counsel was constitutionally ineffective with respect to the obstruction adjustment, and he is not entitled to relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.      The Second Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (doc. 366) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of December 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).